UNITED STATES, Plaintiff–Appellee,

v.

Claudio GONZALEZ–TORRES,
Defendant–Appellant.

No. 91–2140.

United States Court of Appeals,
First Circuit.

Heard Oct. 7, 1992.

Decided Nov. 20, 1992.

As Amended Nov. 20, 1992.

Luis Rafael–Rivera, San Juan, P.R., on brief, for defendant-appellant.

Jose A. Quiles–Espinosa, Asst. U.S. Atty. and Sr. Litigation Counsel, with whom Daniel F. Lopez–Romo, U.S. Atty., and Epifanio Morales–Cruz, Asst. U.S. Atty., Hato Rey, P.R., were on brief, for plaintiff-appellee.

Before CYR, Circuit Judge, BOWNES, Senior Circuit Judge, and FUSTE,* District Judge.

BOWNES, Senior Circuit Judge.

Defendant, Claudio Gonzalez–Torres, was tried by jury on a three count indictment: knowingly, willfully, and unlawfully possessing, with intent to distribute, approximately 3.627 kilograms of cocaine, in violation of 21 U.S.C. § 841(a)(1) (Count One); knowingly, willfully, and unlawfully importing said cocaine into the United States from the Republic of Panama, in violation of 21 U.S.C. § 952(a) (Count Two); and knowingly, willfully, and unlawfully possessing said cocaine on board an aircraft arriving in United States customs territory without it being part of the aircraft's official supplies or being entered on the cargo manifest, in violation of 21 U.S.C. § 955 (Count Three). He was acquitted on Count One and convicted on Counts Two and Three. On appeal, defendant challenges the sufficiency of the evidence, the verdict, and the district court judge's questioning of the defendant.

I

*Background*

The facts are summarized in the traditional post-conviction fashion, taking the evidence in light most favorable to the government. *United States v. Mejia–Lozano*, 829 F.2d 268, 270 (1st Cir.1987); *United States v. Cintolo*, 818 F.2d 980, 983 (1st Cir.), *cert. denied*, 484 U.S. 913, 108 S.Ct. 259, 98 L.Ed.2d 216 (1987).

At trial, Gonzalez testified that at the time of his arrest he was fifty-four years old and lived in a small town four hours driving distance outside Panama City, Panama. His only means of income was to

* Of the District of Puerto Rico, sitting by designation.

make small items like hats and aprons by hand and to bring them to Panama City to sell to street vendors. On December 20, 1990, during one of his trips to the city, Gonzalez was aided by a Mr. Castillo during a riot in a public park. Over the next month, the two became better acquainted and Castillo offered a job to Gonzalez on the condition that he would travel to Madrid, Spain, in order to bring back some documents and a package for Castillo. Gonzalez agreed and subsequently obtained a passport.

Gonzalez was scheduled to leave for Spain on February 14, 1991, for an undetermined amount of time to meet unidentified individuals in an unspecified Madrid hotel. That morning, Gonzalez met with Castillo. Castillo exchanged two suitcases for Gonzalez's travel bag, gave Gonzalez $1500 in U.S. dollars and took him to the airport. Upon boarding Iberia Airlines flight # 934, Gonzalez checked a large black suitcase and carried a smaller one on board. During a routine inspection of in-transit luggage at a stopover at the Luis Muñoz Marín International Airport in San Juan, Puerto Rico, United States customs personnel discovered cocaine concealed within the panels of the large suitcase that Gonzalez checked into the cargo hold. Gonzalez was detained prior to reboarding the plane and his carry-on suitcase was searched. Inspectors found cocaine concealed within various toiletry bottles and the bag itself.

At trial, it was stipulated that: (1) the substance seized was 3.627 kilogram of cocaine; (2) the chain of custody was linked firmly to defendant; (3) Gonzalez was listed on the passenger manifest of Iberia flight # 934 of February 14, 1991, a regularly scheduled flight departing from Panama, landing in Puerto Rico, and continuing on to Madrid, Spain; and (4) said flight did not have cocaine listed on its cargo manifest, nor was cocaine part of the official supplies.

## II

### On Appeal

### SUFFICIENCY OF THE EVIDENCE

■ Gonzalez moved for a judgment of acquittal pursuant to Fed.R.Crim.P. 29 both at the close of the government's case and again prior to closing argument. The district court denied both motions. In this appeal, Gonzalez again asserts that the evidence was insufficient to support his conviction, and, more specifically, that the government failed to prove the requisite knowledge element of the charged offenses beyond a reasonable doubt. Defendant's claim rests upon the fact that the government presented no direct evidence as to the defendant's knowledge of the contents of his luggage and that the cocaine was not readily detectable within the suitcases and defendant had no reason to inspect the nontransparent toiletry bottles. We find that the jury could reasonably find beyond a reasonable doubt that Gonzalez was guilty of the two counts and, therefore, affirm the denial of defendant's motions.

■ The principles governing a review of a challenge to the sufficiency of the evidence are well settled. We "survey the totality of the evidence, scrutinizing the record in the light most favorable to the prosecution and drawing all reasonable inferences in favor of the verdict." *United States v. Amparo,* 961 F.2d 288, 290 (1st Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 224, 121 L.Ed.2d 161 (1992). If reading the record in such a way would allow a rational jury to conclude beyond a reasonable doubt that the defendant was guilty of the charged offenses, then we must affirm the denial of a Rule 29 motion. *Id.; see also United States v. Serrano,* 870 F.2d 1, 5 (1st Cir.1989). The government may prove its case entirely by circumstantial evidence and need not exclude every reasonable hypothesis of innocence, provided the record as a whole supports a conclusion of guilt beyond a reasonable doubt. *United States v. Victoria–Peguero,* 920 F.2d 77, 86–87 (1st Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 2053, 114 L.Ed.2d 458 (1991); *Serrano,* 870 F.2d at 5. The jury is free to choose among reasonable constructions of the evidence and is entitled to resolve any issues of credibility for or against any such reasonable construction. *See United*

*States v. Rivera Rodriguez*, 808 F.2d 886, 890 (1st Cir.1986).

■ The government presented sufficient evidence from which the jury could reasonably find the defendant was guilty. It proved, with direct evidence, that the defendant was a passenger on an aircraft that arrived in Puerto Rico from Panama, that two suitcases on that aircraft contained a controlled substance, that the substance was in fact cocaine, and that the defendant actually or constructively possessed the two suitcases. The knowledge element of the charged offenses can rarely be established with direct evidence. But the totality of the evidence presented at trial permits a rational inference that the defendant knowingly possessed cocaine on board an aircraft and imported it into the United States Customs territory. The record as a whole supports a finding of guilt beyond a reasonable doubt.

## THE VERDICT

■ Gonzalez suggests that the inconsistent verdicts, not guilty as to Count One and guilty as to Counts Two and Three, requires the conviction be vacated but cites no authority supporting such contention. It is well settled that inconsistency in a criminal verdict does not require setting the verdict aside. *Dunn v. United States*, 284 U.S. 390, 393–94, 52 S.Ct. 189, 190–91, 76 L.Ed. 356 (1932); *United States v. Powell*, 469 U.S. 57, 69, 105 S.Ct. 471, 479, 83 L.Ed.2d 461 (1984); *United States v. Bucuvalas*, 909 F.2d 593 (1st Cir.1990). Even so, the verdicts are not inconsistent. Although all three charged criminal violations have the element of knowledge, each violation demanded proof of some distinctive element not part of the other charged violations. *See, e.g., United States v. Ortiz–Alarcon*, 917 F.2d 651, 652 (1st Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 2035, 114 L.Ed.2d 120 (1991). Here, Count One required proof of intent to distribute; Count Two required proof of importation; and Count Three required proof of possession of a controlled substance on board an aircraft entering United States Customs territory. The jury could reasonably, and consistently, find knowing violations of Counts Two and Three but find, as to Count One, that there was no intent to distribute.

## QUESTIONING BY THE JUDGE

On various occasions during trial, the district judge directly questioned a witness on the stand. The judge addressed questions to the defendant five separate times during both direct and cross-examinations. Defendant contends that one particular series of questions unfairly "tilted the balance of justice" against him. Specifically, defendant asserts that the judge abandoned his role of impartiality, undertook the role of prosecutor and cross-examined him. The incisive questioning by the judge, defendant asserts, intimidated him and affected his ability to answer questions appropriately. Gonzalez argues that the questioning tended to bolster any doubts left in the minds of the jury after the prosecutor's cross-examination and was not intended to clarify defendant's testimony, but rather to destroy his credibility.

■ Because the defendant did not object to the judge's questioning during trial, the conduct complained of will be considered under the plain error doctrine. Fed. R.Crim.P. 52(b); *United States v. Williams*, 809 F.2d 75, 82 (1st Cir.1986), *cert. denied*, 481 U.S. 1030, 107 S.Ct. 1959, 95 L.Ed.2d 531, 481 U.S. 1072, 107 S.Ct. 2469, 95 L.Ed.2d 877, 482 U.S. 906, 107 S.Ct. 2484, 96 L.Ed.2d 377 (1987). To prevail, the defendant must show that the error complained of "is so compelling as virtually to insure [ ] success," *Id.*, and that such error seriously affected the fundamental fairness and basic integrity of the proceedings below. *United States v. Griffin*, 818 F.2d 97, 100 (1st Cir.), *cert. denied*, 484 U.S. 844, 108 S.Ct. 137, 98 L.Ed.2d 94 (1987). We find that any misconduct on behalf of the district court judge did not rise to the level of plain error.

■ At trial, the district judge has the responsibility of ensuring its proper conduct and determining questions of law. *Glasser v. United States*, 315 U.S. 60, 62

S.Ct. 457, 86 L.Ed. 680 (1942); *Quercia v. United States*, 289 U.S. 466, 53 S.Ct. 698, 77 L.Ed. 1321 (1933); *United States v. Ciampa*, 793 F.2d 19, 25 (1st Cir.1986). The district judge has the power to question witnesses, Fed.R.Evid. 614(b), but while the judge may "analyze and dissect the evidence, [ ] he may not either distort it or add to it". *United States v. Paiva*, 892 F.2d 148, 159 (1st Cir.1989) (quoting *Quercia v. United States*, 289 U.S. at 470, 53 S.Ct. at 699). The trial judge may, if he deems necessary, examine witnesses in order to provide a clear presentation of the issues, so long as an attitude of impartiality is preserved. *United States v. Paz–Uribe*, 891 F.2d 396, 400 (1st Cir.1989) (citing *Llach v. United States*, 739 F.2d 1322, 1329–1330 (8th Cir.1984)), *cert. denied*, 495 U.S. 951, 110 S.Ct. 2216, 109 L.Ed.2d 542 (1990).

■ Defendant asserts that the line of questions here challenged was at first innocuous and propounded with the intent of clarifying matters at issue in the case, but subsequently turned into cross-examination clearly directed at critical aspects of the defendant's story. The challenged questions were a part of a thirty-nine question series which addressed the specific dates when Gonzalez met with Castillo, when, where, and how defendant obtained his passport, his purported length of stay in Spain and when defendant would return to Panama.

We find that the questioning fell within the judge's role as moderator of the trial. It was conducted by the district judge to clarify a very confusing sequence of events. The judge asked direct, specific questions designed to make clear the testimony of the defendant. The judge's impartiality remained intact throughout. We note also that the judge asked defendant a series of questions during direct examination when defendant ran into hearsay problems in presenting his defense.

There is no support in the record for defendant's claim that the judge's questions were prejudicial or adversely affected the fairness and outcome of the trial. Moreover, the judge gave proper and extensive instructions to the jury, both at the start and conclusion of the trial, regarding the respective roles of the judge and jury and how the jury should consider any remark made or questions asked by the judge during the trial. The questioning by the trial judge did not constitute plain error.

*Affirmed.*