USCA1 Opinion

 

 S e p t e m b e r 3 0 , 1 9 9 3 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 92-2350 UNITED STATES OF AMERICA, Appellee, v. WILLIAM CORGAIN, Defendant, Appellant. ____________________ ERRATA SHEET The opinion of this Court issued on September 27, 1993, is amended as follows: On page 6, line 11, replace "prison's" with "person's". UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 92-2350 UNITED STATES OF AMERICA, Appellee, v. WILLIAM CORGAIN, Defendant, Appellant. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. A. David Mazzone, U.S. District Judge] ___________________ ____________________ Before Torruella, Circuit Judge, _____________ Campbell, Senior Circuit Judge, ____________________ and Boudin, Circuit Judge. _____________ ____________________ Lawrence P. Murray with whom Henry F. Owens III, by Appointment ___________________ ____________________ of the Court, and Owens & Associates were on brief for appellant. __________________ Sheila W. Sawyer, Assistant United States Attorney, with whom _________________ A. John Pappalardo, United States Attorney, was on brief for the ___________________ United States. ____________________ September 27, 1993 ____________________ CAMPBELL, Senior Circuit Judge. Defendant- _______________________ appellant, William Corgain, was tried and convicted for the robbery of two Boston-area banks on three occasions in the Fall of 1991. He was sentenced to 210 months in prison. 18 U.S.C. 2113(a). In this appeal he seeks reversal of his conviction, alleging trial errors. We affirm the conviction. I. I. On October 15, 1991, the Bank of Boston in Uphams Corner in Dorchester, Massachusetts was robbed by a lone male. The robber obtained over $1,000 in cash and checks from a teller named Patricia Driscoll. The next day, October 16, 1991, a lone male robbed the Shawmut Bank in Mattapan, Massachusetts, and obtained $2,750 in cash from a teller named Jeanette P. Parrell. On November 22, 1991, the same Bank of Boston in Uphams Corner, Dorchester, that had previously been robbed on October 15 was again robbed by a lone male. The robber obtained $5,200 in cash from Driscoll, the same teller involved in the previous incident. Corgain was apprehended, and charged with all three robberies. II. II. Confrontation of Witness Confrontation of Witness ________________________ Corgain complains that the district judge erroneously limited his attorney's cross-examination of Patricia Driscoll, the teller who witnessed the two -3- Dorchester bank robberies. At a March 1992 lineup, Driscoll identified Corgain as the unmasked man who had robbed her during both the October 15, 1991, and November 22, 1991, incidents. At Corgain's trial in June 1992, the prosecutor showed Driscoll a photograph of the persons she had viewed in the lineup, and she once more identified Corgain as the man who had robbed her on both occasions. During cross-examination, Corgain's attorney questioned Driscoll extensively on her ability to identify Corgain as the person who robbed her twice. Driscoll admitted that the robbery had happened "quickly" and that she had been "very nervous." Corgain's attorney also successfully drew out some inconsistencies between Driscoll's original descriptions of the bank robber and the actual physical characteristics of Corgain she had originally described him as five feet eight or nine inches tall with a thin build, while Corgain in fact was six feet tall and of medium build. Driscoll also admitted that she had originally described the robber as "average" with no distinguishing marks. Then, Corgain's attorney again showed Driscoll the photograph of the March 1992 lineup and asked her to describe the faces and distinguishing facial characteristics of the participants whom she had not identified as the bank robber, ___ i.e., everyone other than Corgain. The government objected ____ -4- and was sustained by the court. Corgain's attorney then tried a couple of narrower questions, asking Driscoll to describe the faces of two particular participants in the lineup photograph. After each of these questions, the government objected and was sustained. At a sidebar conference, the court questioned the relevance of the line of questioning, saying that Driscoll's ability to identify the robber did not turn on her ability to verbally describe the others in the lineup photo. The court also noted that Corgain's attorney had developed considerable other material from which to argue to the jury that Driscoll's identification was faulty. Corgain now contends that the exclusion of this line of questioning violated his Sixth Amendment right to confront witnesses against him. U.S. Const., Amend. VI; Olden v. Kentucky, 488 U.S. 227, 231 (1988) (circumscribing _____ ________ defendant's cross-examination of government witnesses implicates Sixth Amendment's confrontation clause). He argues that the proposed cross-examination was relevant, and should have been allowed because Driscoll's ability to describe the other persons at the lineup would have cast light on her ability to distinguish Corgain from the others, and hence on the reliability of her identification of Corgain. See Delaware v. Van Arsdall, 475 U.S. 673, 680 ___ ________ ___________ (1986) (confrontation clause rights violated when defendant -5- prevented from exposing jury to facts from which they could appropriately draw inferences about witness's reliability). We do not find reversible error. The Sixth Amendment right to confront adverse witnesses, fundamental as it is, United States v. Twomey, 806 F.2d 1136, 1140 (1st Cir. _____________ ______ 1986) (citing Alford v. United States, 282 U.S. 687, 691-92 ______ _____________ (1931)), does not allow unlimited cross-examination of an adverse witness. "[T]rial judges retain wide latitude . . . to impose reasonable limits on such cross-examination based on concerns about, among other things, . . . interrogation that is . . . only marginally relevant." Brown v. Powell, _____ ______ 975 F.2d 1, 3-4 (1st Cir. 1992) (citing Van Arsdall, 475 U.S. ___________ at 679). The judge here could reasonably conclude that Driscoll's ability verbally to describe those individuals in the lineup photo whom she did not identify as the robber was ___ of marginal relevance to the primary issue raised by her testimony, namely, her ability to identify Corgain as the man who robbed the bank at which she worked. See United States ___ _____________ v. Malik, 928 F.2d 17, 20 (1st Cir. 1991) (trial judge did _____ not abuse discretion by curtailing cross-examination the relevance of which was not clear). Corgain argues that Driscoll's answer would have revealed what particular facial characteristics caused her to exclude the others and identify Corgain. It is unclear, -6- however, how material or useful Driscoll's thoughts along these lines would have been. The key question was whether Driscoll reliably recognized Corgain as the robber, not whether the others had certain facial characteristics or whether Driscoll could extemporaneously describe them. The jury had the lineup photo before it as an exhibit. If Corgain wished to convey that all the participants looked so much alike as to render Driscoll's identification of the robber problematic, defense counsel could have sought leave to reformulate his questions so as more obviously to elicit that point, or else waited to argue to the jury from the photo exhibit itself both the resemblance and difficulty of recognition. If Corgain's attorney was instead merely testing Driscoll's ability to describe a person's appearance verbally, the judge could reasonably question the relevance of the exercise. When recognizing someone, people often rely upon subtle factors not easily reducible to words. Lineups are employed for this reason verbal descriptions by themselves being of limited use to identify the person seen at the time of a crime. In any event, the court's ruling did not prevent defense counsel from making any argument he wished to the jury based upon an asserted difficulty of distinguishing between the people portrayed in the photo exhibit of the lineup. -7- We have read the full cross-examination of Driscoll and are unable to say that defense counsel was denied a fair and adequate opportunity to cross-examine her. Exclusion of the proposed questions did not leave the jury without "sufficient information concerning formative events to make a `discriminating appraisal' of [the] witness's motives and bias." Twomey, 806 F.2d at 1140. Defense counsel was able ______ to elicit considerable information challenging Driscoll's ability to identify Corgain, including the facts that (1) Driscoll viewed the robber for less than three minutes at each incident; (2) Driscoll described her own condition during the first robbery as "very upset, almost hysterical;" and (3) there were some inconsistencies in the way she described the robber after each of the two incidents. We conclude that the court did not abuse its discretion in excluding these particular questions. See ___ United States v. Concemi, 957 F.2d 942, 947 (1st Cir. 1992) _____________ _______ (trial judge need not permit "`unending excursions into each and every matter touching on veracity if a reasonably complete picture has already been developed.'") (citation omitted). Cf. Brown, 975 F.2d at 3-4 (confrontation right __ _____ not violated by court's decision to bar defense counsel from eliciting testimony that witness had avoided potential life sentence by testifying, where jury could infer that witness received some leniency in exchange for testimony, and where -8- defense counsel had challenged witness's credibility on other grounds). III. III. Abandonment of Judicial Impartiality Abandonment of Judicial Impartiality ____________________________________ Corgain contends that the district judge prejudiced Corgain by exhibiting partiality for the prosecution. Jeanette P. Parrell was working as a teller at the Shawmut Bank in Mattapan, Massachusetts during the robbery on October 16, 1991. Like Driscoll, Parrell was able to observe the robber's face and physique at the time of the crime. During direct examination, the prosecutor asked Parrell to identify the perpetrator of the crime. Before permitting Parrell to answer, the judge conferred at sidebar with both counsel and instructed the prosecutor to first ask the witness to _____ "describe to the jury the person you saw" during the robbery, and then to ask the witness to identify the robber in the ____ courtroom. Corgain contends that, by interceding in this way, the judge deliberately helped the prosecutor bolster the reliability of Parrell's identification. According to Corgain, this prejudiced defendant by prompting the prosecutor to explore more fully the witness's powers of observation and description, thereby undermining the effectiveness of cross-examination concerning the witness's descriptive abilities. By so abandoning impartiality, -9- defendant contends, the judge deprived him of a fair trial. See, e.g., United States v. Wilensky, 757 F.2d 594, 598 (3d ___ ____ _____________ ________ Cir. 1985) (criminal trial unfair "where the judge's role loses its color of neutrality and tends to accentuate and emphasize the prosecution's case"). We see no impropriety in the judge's conduct. The court apparently sought to make more logical the sequence in which information was presented, so that jurors would not be confused. Doing so was an appropriate exercise of the judge's powers to supervise the trial. See, e.g., United States v. Iredia, 866 F.2d 114, 119 ___ ____ _____________ ______ (5th Cir.) (most of trial judge's suggestions to prosecutor about how to improve his presentation were in the nature of exercising firm control over the trial, and did not deprive defendants of fair trial), cert. denied, 492 U.S. 921 (1989). ____________ Judges have the right and indeed the duty to exercise fair control over the conduct of a trial. IV. IV. Refusal to Suppress Identification Refusal to Suppress Identification __________________________________ After the defendant was arrested, a number of witnesses from different robberies identified him as the bank robber in a March 1992 lineup. Several of the witnesses jointly participated from behind a one-way mirror. If the robber were present, they were instructed to identify him by writing his placement in the lineup on a secret ballot. They were also told not to consult with the other witnesses in the -10- viewing room, nor to look at what other witnesses had written on their ballots. At a pretrial hearing, the defendant unsuccessfully moved to suppress the results of this identification on the ground that the presence of more than one witness in the viewing room at the same time had undermined the fairness of the procedure. United States v. Bagley, 772 F.2d 482, 494 _____________ ______ (9th Cir. 1985) ("A joint confrontation is a disapproved identification procedure . . . . Clearly, the better procedure is to keep witnesses apart when they view . . . ."), cert. denied, 475 U.S. 1023 (1986). Corgain complains ____________ that it was error not to suppress the identification here. However, the fact that more than one witness is present during a lineup does not necessarily invalidate the procedure. See United States v. Lespier, 558 F.2d 624, 631 ___ ______________ _______ (1st Cir. 1977) (lineup in which communication among witnesses was possible was not unnecessarily suggestive or conducive to irreparable misidentification). Everything depends on the particular circumstances. Here there was evidence the witnesses did not collaborate with one another. Cf. Monteiro v. Picard, 443 F.2d 311, 312-13 (1st Cir. 1971) ___ ________ ______ (witnesses' identifications tainted where they heard another witness make her lineup identification before making their own). Each witness testified that he or she did not speak to the other witnesses during the identification process. -11- Identification was by secret ballot. The court was entitled to conclude, as it apparently did, that no witness when making a choice knew what choice another had made. On this record, there was no error in the district court's decision to deny the suppression motion. -12- V. V. Jury Instruction on Inferences Jury Instruction on Inferences ______________________________ In his final charge to the jury, the district judge instructed that the government "must prove beyond a reasonable doubt that the defendant took the money from the bank knowingly and willfully . . . ." He further told them that they could infer the requisite intent "from the surrounding circumstances of the case, including the words and actions of the defendant." The defendant argues on appeal that this instruction was deficient because the judge failed to explain that the surrounding circumstances from which intent could be inferred themselves had to be established beyond a reasonable doubt. As a result of this deficiency, defendant contends, the jury might have been led to believe that it could find the requisite intent on the basis of facts that had not been proved beyond a reasonable doubt, thereby diluting the government's burden of proof below the minimum required by constitutional due process. In __ re Winship, 397 U.S. 358, 364 (1970) (due process clause ___________ "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged"). We find no merit in this contention. To explain the government's fundamental burden under In re Winship, the _____________ court properly stated: -13- First, the defendant is presumed innocent until proven guilty. . . . Second, the burden of proof is on the Government. The Government brought the case. It must now prove the case beyond a reasonable doubt. . . . Again, I emphasize that the burden of proof is on the Government. It __ extends to every element of the crime _________________________________________ charged. . . . (Emphasis added.) _______ Against this essential backdrop, the instruction as to inferring intent "from the surrounding circumstances of the case, including the words and actions of the defendant", was appropriate. To have gone further in the direction appellant now urges could have misled the jury, as it would not be correct that each subsidiary fact and inference forming a part of the mosaic making up the jury's ultimate finding of guilt beyond a reasonable doubt need itself be established beyond a reasonable doubt. See United States v. Viafara- ___ ______________ ________ Rodriguez, 729 F.2d 912, 913 (2d Cir. 1984) (burden of proof _________ beyond a reasonable doubt does not operate on each subsidiary fact on which the prosecution relies to persuade jury that a particular element has been established beyond reasonable doubt). See 9 Wigmore, Evidence 2497 & n.8 (Chadbourn rev. ___ 1981 & Supp. 1991) (burden need not be applied to subsidiary facts but to whole issue). See also Dirring v. United _________ _______ ______ States, 328 F.2d 512, 515 (1st Cir. 1964) (question is ______ whether total evidence, including reasonable inferences, is sufficient to warrant a jury to conclude defendant is guilty beyond reasonable doubt). -14- Affirmed. ________ -15-