USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 94-1264 UNITED STATES OF AMERICA, Appellee, v. HECTOR JULIO FELIX MONTAS, Defendant, Appellant. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. Jose Antonio Fuste, U.S. District Judge] ___________________ ____________________ Before Torruella, Chief Judge, ___________ Coffin and Campbell, Senior Circuit Judges. _____________________ ____________________ Rafael F. Castro Lang for appellant. _____________________ Esther Castro Schmidt, Assistant United States Attorney, with ______________________ whom Guillermo Gil, United States Attorney, and Jose A. Quiles- ______________ ________________ Espinosa, Senior Litigation Counsel, were on brief for appellee. ________ ____________________ December 7, 1994 ____________________ COFFIN, Senior Circuit Judge. Hector Julio Felix Montas _____________________ appeals his conviction after jury trial for possession with intent to distribute cocaine. He raises three issues: the sufficiency of the evidence to support the jury verdict, the appropriateness of the district judge's conduct during the trial, and the admission of expert testimony concerning the use of false names by airplane drug couriers. While we are given pause by some aspects of the case, we conclude that there is no reversible error. Background __________ On June 30, 1993, a dog used by a United States Customs K-9 unit detected drugs in two suitcases checked onto a flight from San Juan, Puerto Rico, to New York City. The two bags had been checked in the name of Miguel Rivera ("Rivera") and bore identification tags with Rivera's name written by hand. Customs inspectors located a third bag checked in Rivera's name, but no cocaine was detected therein. This third bag also had an identification tag affixed to it, which bore the handwritten name of Pedro Felix followed by defendant's address. All three bags had consecutive claim tag numbers. Airline records indicated that Felix and Rivera had purchased their tickets, checked in, and checked their bags, at the same time. They also had been assigned adjacent seats on the flight.1  ____________________ 1 In its brief the government misleadingly asserts that "the name of Miguel Rivera appeared on all three" bags. By failing to explain what only a close reading of the trial transcript reveals -- that the airline placed tags with Rivera's computer-printed ___________ name on the bags -- the government implies the existence of a -2- Upon detection of the presence of drugs, Customs inspectors rushed to the flight gate to locate Rivera and Felix. Though many of the passengers already had boarded, they found defendant in the gate area and asked to see his ticket and boarding pass. Defendant showed them these documents, which were in the name of "Felix, P.," and they detained him. Defendant asked why he was being held and was told "because the dog has detected the odor of narcotics on your bags." Supervisory Customs Inspector Irizarry went to search the plane for Rivera, telling Inspector Ramos to stay and watch defendant closely because he thought he looked nervous and was getting ready to throw away something he had in his pants pocket. This prediction proved prescient, for, after watching defendant take his hands in and out of his pockets several times, Ramos observed what he described as a crumpled piece of paper fall from defendant's back. Ramos said, "something fell from you." Defendant replied: "Not me. That's not mine." Ramos picked up the crumpled papers and discovered that they were the claim checks for the three pieces of luggage, two of which contained the cocaine. Defendant was taken into custody, where he was found to be in possession of a Dominican Republic passport and other identification in the name of Hector Julio Felix Montas. There is conflicting evidence on what happened next. The government contends that Irizarry and another Customs official  ____________________ stronger connection among the bags, and of the defendant to them, than is warranted. -3- entered the plane and determined that no passenger named Rivera was aboard. Defendant argues that Rivera was on the plane when it took off and disembarked with the other passengers in New York, noting that this theory finds support in testimony by DEA Agent Ivan Rios at a preliminary hearing. Rios, who arrived on the scene after defendant was detained, testified that Customs officials told him that Rivera had taken off on the flight. He also testified that, by the time authorities were contacted in New York, the passengers already had disembarked. In any event, no Rivera was ever apprehended. The jury convicted defendant of the single count with which he was charged, possession with intent to distribute cocaine. Discussion __________ We address the three claims of error in turn. I. Sufficiency of the Evidence ___________________________ In assessing the sufficiency of the evidence to support the jury's guilty verdict, we read the record and draw all reasonable inferences therefrom in the light most favorable to the prosecution. United States v. Loder, 23 F.3d 586, 589 (1st Cir. _____________ _____ 1994). We must affirm if, based on the evidence viewed in this way, a rational fact finder could have found defendant guilty beyond a reasonable doubt. Id. ___ The evidence adduced at trial was sufficient to sustain the verdict. Though the bags containing cocaine were checked to Rivera and bore identification labels with Rivera's hand-written name, the record shows that defendant was linked to these bags in -4- several ways. First, he possessed the claim checks for the bags, making reasonable the inference that he planned to pick them up upon arrival in New York. Possession of such claim checks, because they "represent [the] legal right to reclaim the luggage," is sufficient to show constructive possession over the luggage itself. United States v. Ocampo-Guarin, 968 F.2d 1406, ______________ _____________ 1410 (1st Cir. 1992). Second, when he was detained, he intentionally threw away the claim checks. Such evidence is highly probative that he was conscious of his own guilt. Third, defendant and Rivera bought their tickets together, checked in together, and checked their bags together. This could show nothing more than that the two men were co-travellers, but, when taken together with the other evidence, it also supports the inference that either Rivera never existed and defendant created his persona as part of a scheme to avoid detection, or that the two men were cohorts in a smuggling endeavor. In any event, based on the totality of the evidence, a rational jury could find defendant guilty beyond a reasonable doubt. Defendant argues that all of this evidence is perfectly consistent with innocence. He submits that he possessed the claim checks for the bags containing cocaine only because the airline clipped both his and Rivera's checks onto his ticket jacket, as the airline representative testified is sometimes done when two passengers check in together. He points out that he threw away the checks only after being told that the odor of narcotics was detected in "his" bags. He says he then realized -5- for the first time that Rivera's bags must have contained narcotics. Throwing away the checks, he contends, was simply a natural human reaction to avoid the erroneous conclusion that he was involved. He also stresses that the handwritten identifications tags showed that the cocaine-filled bags were Rivera's and the unoffending bag was his. This argument fails for two basic reasons. First, even assuming the plausibility of defendant's explanations, it is not a prerequisite of conviction that the prosecution adduce evidence to preclude "every reasonable hypothesis of innocence." United ______ States v. Gonzalez-Torres, 980 F.2d 788, 790 (1st Cir. 1992). ______ _______________ Moreover, defendant made this same argument -- that the evidence showed nothing more than that he was an innocent co-traveller with Rivera -- to the jury. Because there was sufficient evidence to make reasonable a finding of guilt, the jury was entitled to discredit his theory of innocence. See, e.g., id.  ___ ____ ___ II. The Judge's Conduct ___________________ Defendant next urges us to reverse because, he asserts, the district judge became "a partisan of the government's case," thus depriving him of a fair trial. See, e.g., United States v. ___ ____ _____________ Wilensky, 757 F.2d 594, 598 (3d Cir. 1985) (criminal trial unfair ________ when "the judge's role loses its color of neutrality and tends to accentuate and emphasize the prosecutor's case"), cited in United ________ ______ States v. Corgain, 5 F.3d 5, 9 (1st Cir. 1993). The judge's ______ _______ allegedly improper conduct consists of questioning a prosecution witness and admonishing the prosecutor on her trial strategy in a -6- manner reflecting adversely on defendant's case. We have reviewed these matters, as well as the entire record, and find no conduct by the judge warranting reversal. The role of a federal trial judge, of course, is not limited to that of a "mere umpire." United States v. Polito, 856 F.2d _____________ ______ 414, 418 (1st Cir. 1988). Instead, the judge "is the governor of the trial for assuring its proper conduct." Desjardins v. Van __________ ___ Buren Community Hosp., 969 F.2d 1280, 1281 (1st Cir. 1992) (per _____________________ curiam) (quoting Quercia v. United States, 289 U.S. 466, 469 _______ ______________ (1933)). In the exercise of this power, a trial judge has "the prerogative, and at times the duty, of eliciting facts he deems necessary to the clear presentation of issues. To this end he may examine witnesses who testify, so long as he preserves an attitude of impartiality and guards against giving the jury the impression that the court believes the defendant is guilty." United States v. Paz Uribe, 891 F.2d 396, 400-401 (1st Cir. 1989) _____________ _________ (quoting Llach v. United States, 739 F.2d 1322, 1329-1330 (8th _____ _____________ Cir. 1984)). An appellate court, when asked to reverse because of asserted improper conduct by a trial judge, must "consider isolated incidents in light of the entire transcript so as to `guard against magnification on appeal of instances which were of little importance in their setting.'" Aggarwal v. Ponce School ________ ____________ of Medicine, 837 F.2d 17, 22 (1st Cir. 1988) (quoting Glasser v. ___________ _______ United States, 315 U.S. 60, 83 (1942)).  _____________ Preliminarily, we note that defense counsel never objected to any of the court's conduct about which he now complains. We therefore review the issue for plain error only. Fed. R. Crim. P. 52(b); United States v. Gonzalez-Torres, 980 F.2d 788, 791 _____________ _______________ -7- (1st Cir. 1992). To satisfy this standard, defendant must show that there was error, that it was clear or obvious, and that it affected a substantial right. United States v. Olano, 113 S. Ct. _____________ _____ 1770, 1776-78 (1993). "[E]rror rises to this level only when it is `so shocking that [it] seriously affect[ed] the fundamental fairness and basic integrity of the proceedings conducted below.'" United States v. Ortiz, 23 F.3d 21, 26 (1st Cir. 1994) _____________ _____ (quoting United States v. Olivo-Infante, 938 F.2d 1406, 1412 (1st _____________ _____________ Cir. 1991)) (internal quotations omitted). The first alleged impropriety concerns the court's questioning of a prosecution witness during her cross- examination. Sandra Roman, who worked for the airline as a ticket agent at the San Juan airport, testified that she sold two tickets in the names of Miguel Rivera and Pedro Felix, and checked in three bags under Rivera's name, at 5:45 in the morning of the flight. On cross-examination, defense counsel tried to advance the theory that Rivera was allowed to take off on the flight to New York and disembark there. He handed Roman a document captioned "passenger list" and asked whether "the names that you find here would be the names of the passengers on that particular flight?" Roman replied in an ambiguous manner2 and the court asked whether the people on the "passenger list" actually boarded the plane. Roman answered: "This is not my area, okay? So I am not very expert on the information in this list. I really work at the counter, so I work with the  ____________________ 2 The transcript shows she answered by stating "aha." -8- reservation, not with the list." When defense counsel persisted in inquiring further about the list, the court finally asked Roman: "Do you know whether that list means that all the persons boarded the plane?" Roman replied: I am not sure. Okay, there is a list that says -- what is called the on list. That is the one that all the passengers are on board, and it doesn't look -- I don't think it's this one. There is another list with all the reservations that we have for the flight. So I'm not sure which one is this one, if this is the on list, what we call the on list, or the list of all the people that had reserved for that flight. Defense counsel continued to cross-examine Roman, successfully eliciting that, when two passengers check in together with luggage, sometimes both of their baggage claim checks are clipped to one passenger's ticket jacket. This testimony was obviously helpful to defendant because it made plausible his assertion that he possessed the incriminating claim checks simply due to the innocent fact of his having checked in with Rivera. The prosecution tried to discredit this theory on redirect by suggesting that, since the bags were checked in Rivera's name, the baggage claim checks would have been clipped to his ticket jacket, not defendant's. On recross-examination, the defense rebutted this suggestion by eliciting that baggage checks may be clipped to one of the passenger's ticket jackets regardless of which passenger actually checked the bags. The judge then asked Roman: THE COURT: When somebody goes to the counter to buy a ticket or two tickets or three tickets, do you need to have the physical presence of the two or three persons there, or can the one person buy the three tickets? -9- THE WITNESS: One person can buy however number [of] ticket[s] he wants. THE COURT: And I can go with my wife, for example, and say "Here I am to check in." My wife may be in the bathroom or buying something and I can check in and you don't see her face physically, correct? THE WITNESS: No. Later, during oral argument outside the jury's presence on the defense motion for a judgment of acquittal, the court made certain statements that defendant argues show the court's bias in favor of the prosecution. In essence, the court chided the prosecutor for failing to produce the "on list" to which Ms. Roman referred, and for failing to have someone from the airline testify that no one named Rivera ever turned in a boarding pass. The court explained that it thought this evidence was crucial because "it is entirely possible that [Rivera is] a no[n] entity. It's entirely possible that somebody bought a ticket in his name not to use it." The prosecutor responded that she had called a Customs inspector who testified that no Miguel Rivera ever checked in at the gate. THE COURT: I understand he said that. But the truth of the matter is that it would have looked better if someone from American Airlines would have come to verify that same fact. . . . I do think your case contains elements enough for it to go before the jury. . . . But the truth of the matter is that you are missing a very important element, extremely important. Don't be surprised if you get a defendant's verdict in this case. MS. CASTRO: Okay. Thank you, your Honor. -10- THE COURT: As a matter of fact, you want me to tell you, I don't think Miguel Rivera was ever at the airport, but that's besides the point. We find the court's questions concerning the "passenger list" to have been entirely appropriate. The defense tried to prove that Rivera must have boarded the plane because his name was on the list. By its questions, the court elicited that the list under review may not have been the "on list," i.e., the list of passengers who actually boarded, but rather, only a list of those who had made a reservation for the flight. Thus, the effect of the court's questioning was to clarify the true significance of the document for the jury, which is, of course, entirely proper. See, e.g., Corgain, 5 F.3d at 9; Paz Uribe, 891 ___ ____ _______ _________ F.2d at 401. No judicial bias inheres in the fact that the premise of defendant's theory, that Rivera's name on the list meant he boarded the plane, was shown to be more dubious than the defense wanted the jury to believe. With the benefit of hindsight, we could take issue with the court's questions regarding the possibility of checking in for other passengers in their absence. After all, neither side had broached this topic with Roman,3 so it is difficult to see what confusion or ambiguity in the mind of the jury required clarification. Further, the testimony the judge elicited  ____________________ 3 The prosecutor may have attempted to make this point when one of the customs inspectors testified earlier that day. She asked him whether either Rivera or Felix could have checked the bags. The court sustained defense counsel's objection, stating: "We have to wait for the American Airlines person." The prosecutor never took up the issue when Roman later testified. -11- apparently did little more than highlight the possibility that Rivera was never at the airport. It showed that it was possible for the defendant, acting alone, to have bought the two tickets, checked in for himself and Rivera, and checked in the three pieces of luggage under Rivera's name -- a theory that, as we know from the judge's later comments, he himself believed. While this testimony perhaps more properly would have been elicited by the prosecutor than the judge, we do not think defendant's right to a fundamentally fair trial was affected. First, the fact that it is possible to buy tickets and check in for another passenger is collateral to the ultimate determination of defendant's guilt or innocence. Second, in eliciting this testimony, the judge did not expressly display an attitude of partiality or tip his hand to the jury concerning his belief about Rivera's existence or defendant's guilt or innocence. See ___ Paz Uribe, 891 F.2d at 400-401. Nor do we think there was a __________ significant risk that the jury perceived any partiality based on the fact of asking these questions. If any such risk existed, it was ameliorated by the court's instruction to the jury, at the beginning of the trial, that "[n]othing that I may say, nothing that I may do, is intended by me as indicating what your verdict should be." As already noted, the judge's comment that he did not believe Rivera was ever at the airport took place outside the jurors' presence and thus could not possibly have affected their verdict. Further, in the context of the court's overall supervision of the trial, the challenged conduct amounted to very -12- little. See Polito, 856 F.2d at 418. The judge's few questions ___ ______ on this score were not the type of serious departure from the wide boundaries of the judicial role that requires reversal, and certainly not where there was no objection below. Finally, defendant complains that, by pointing out the failure to show conclusively that no Rivera was aboard, the court gave the prosecutor a suggestion of valuable trial strategy at a time when she still could have used it to her benefit. But this argument ignores that the court expressly ruled that it would not allow the government to re-open its case to correct the deficiency. There was, in fact, no further evidence offered by the prosecution and thus no prejudice to the defendant. III. Admission of Expert Testimony _____________________________ The defendant also asserts that the court erred in admitting certain expert testimony under Fed. R. Evid. 702 because it concerned a subject within an average juror's understanding. The testimony was given by the government's case agent, DEA Agent Rios. We reproduce it in its entirety. Q. Based on your experience, was it unusual that this person who has been detained as Pedro Felix was carrying a passport identifying himself with another name? Mr. Castro Lang: Objection, your Honor. Leading, number one. Second, it's requesting the witness to speculate about matters that are not in evidence. The Court: Let me say this: You can rephrase the question. Q: Have you participated in many airport cases? -13- A: Yes, ma'am. Q. Have you participated in cases where suitcases are involved containing narcotics? A. Yes, Ma'am. Mr. Castro Lang: Objection, Your Honor. The Court: Grounds? Mr. Castro Lang: We are dealing with this interception. Were they interceptions that were unrelated to this case? If that's the situation, I object. The Court: Overruled. Q. And in these situations where you have intervened with individuals who had narcotics in their suitcases, what has been your experience as to the names on the suitcases and the names on the individuals? Mr. Castro Lang: Objection, your Honor. The Court: Overruled. A. My experience has been that possibly 99 percent of the previous cases I've had as a special agent of the Drug Enforcement Administration, cases related to airport seizures like this particular one, have been that the person is travelling under an assumed name. Q. By "travelling under an assumed name," what do you mean by this? A. They use a different name in their flight ticket in order to avoid -- a different name in the flight ticket in comparison to the name that is the real name. For instance, in an ID -- they will use an ID if they have one, Okay? And they will place a different name in the flight ticket which would in turn put a different name also in the claim tags and also in the claim checks. Q. Are you telling us that there would be one name on the suitcases -- A. Correct[], different from his real name, in order to avoid any kind of linking between that particular suitcase, the name on that particular suitcase, to his real person, to his real name. -14- Q. And why would he want to avoid that? A. Well, that's obvious right there. Because if you are ever caught with a controlled substance in a particular suitcase and you get asked your name, you show a different ID to the name on the label, and in that way you will try to avoid being caught. On summation, the prosecutor emphasized the similarity between defendant's conduct and the conduct that Rios attributed to "99 percent" of the drug smugglers caught in his previous cases: And then you remember the testimony of the case agent in this case, Mr. Ivan Rios. He told you he's been -- he's intervened in many airport cases involving suitcases. He also told you, ladies and gentlemen, that in 99 percent of the cases in which he's intervened, the person is travelling under an assumed name, like the defendant here, P. Felix, when in fact his name is Hector Julio Felix Montas. And he also told you that besides travelling under an assumed name, like the defendant here, based on his experience, the names that appear on the suitcases do not correspond to the name of the person arrested. And I said, "Well, isn't that unusual? Why is that, Mr. Rios?" And he said, "No, that's not unusual. That's very common. Because in case the person is arrested, he doesn't want his name on those suitcases. He doesn't want to be connected to those suitcases." We have quoted the record so extensively to show that, while defense counsel objected to Agent Rios's testimony, he did so only on the grounds of leading, speculation, and -- as best we can understand his last objection -- relevance. At no time did he object to this testimony on the basis either that it was not a proper subject of expert testimony under Fed. R. Evid. 702 or that it was unfairly prejudicial under Fed. R. Evid. 403. No objection of any kind was registered to the prosecutor's argument -15- on summation. Thus, we review these matters for plain error only. See United States v. Castiello, 915 F.2d 1, 3-4 (1st Cir. ___ _____________ _________ 1990); United States v. Gonzalez-Sanchez, 825 F.2d 572, 583 n.27 _____________ ________________ (1st Cir. 1987) ("Without a timely objection stating the specific grounds therefor, our review is limited to plain error."). The initial test for determining the admissibility of expert testimony is laid out in Fed. R. Evid. 702. Under Rule 702, an expert may testify concerning "scientific, technical, or other specialized knowledge" if it "will assist the trier of fact to understand the evidence or to determine a fact in issue." As the Advisory Note to the Rule states: There is no more certain test for determining when experts may be used than the common sense inquiry whether the untrained layman would be qualified to determine intelligently and to the best degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute. Fed. R. Evid. 702 advisory committee's note (quoting Ladd, Expert ______ Testimony, 5 Vand. L. Rev. 414, 418 (1952)); United States v. _________ _____________ Lamattina, 889 F.2d 1191, 1194 (1st Cir. 1989). A district _________ judge, who sees and hears the challenged evidence first hand in the context of the overall trial, enjoys broad discretion in determining the admissibility of expert testimony; an appellate court will overturn such a determination only if it represents a manifest abuse of discretion. United States v. Echeverri, 982 _____________ _________ F.2d 675, 680 (1st Cir. 1993). Even if admissible under Rule 702, expert testimony still may be excluded under Fed. R. Evid. 403 if its probative value is substantially outweighed by the risk of unfair prejudice it -16- creates. See Castiello, 915 F.2d at 3-4; United States v. ___ _________ ______________ Hensel, 699 F.2d 18, 38 (1st Cir. 1983). Accord United States v. ______ ______ _____________ Castillo, 924 F.2d 1227, 1232 n.9 (2d Cir. 1991). The 403 ________ inquiry also is left to the sound discretion of the trial court, an appellate court substituting its judgment "only rarely -- and in extraordinarily compelling circumstances." Newell Puerto ______________ Rico, Ltd. v. Rubbermaid Inc., 20 F.3d 15, 21 (1st Cir. 1994) ___________ _______________ (quoting Freeman v. Package Machinery Co., 865 F.2d 1331, 1340 _______ _______ ______________________ (1st Cir. 1988)) (internal quotation omitted). We have admitted expert testimony regarding the operation of criminal schemes and activities in a variety of contexts, finding such testimony helpful to juries in understanding some obscure or complex aspect of the crime. See Echeverri, 982 F.2d at 680 ___ _________ (expert may "identify an otherwise inscrutable document as a drug ledger and explain its contents"); Castiello, 915 F.2d at 3 _________ (statement phrased in drug world jargon "was not so readily comprehensible to the layman that it could not bear elucidation by a law enforcement agent knowledgeable in the ways of the drug world"); United States v. Angiulo, 897 F.2d 1169, 1189 (1st Cir. _____________ _______ 1990) (expert testimony that defendants played certain roles in criminal activities is helpful to jury because of the crime family's "extensive criminal organization . . ., the complexity of the interrelationships within the organization, and the use of criminal jargon by defendants in their conversations"); Lamattina, 889 F.2d at 1194 (expert may translate the meaning of _________ jargon used in conversation related to a loansharking transaction -17- that jury "would probably have been at a loss to understand"); United States v. Ladd, 885 F.2d 954, 959-60 (1st Cir. 1989) ______________ ____ (expert may testify that type of packaging and number of packages of drugs is consistent with distributive intent, not personal use, because "jurors are not expected to be familiar with the . . . workings of the heroin community"); United States v. Angiulo, _____________ _______ 847 F.2d 956, 973-75 (1st Cir. 1988) (expert testimony that defendants were close associates of organized crime family assisted jury in light of family's complex structure); United ______ States v. Rivera Rodriguez, 808 F.2d 886, 888 (1st Cir. 1986) (to ______ ________________ help jurors understand the significance of an instrument called a "sifter-grinder" found in defendant's possession, expert may testify that it is used to adulterate cocaine); Hensel, 699 F.2d ______ at 38 (since "smuggling tons of marijuana is a complex matter," expert testimony about drug smugglers' methods would help the jury understand the evidence). This case is distinguishable. Unlike those cases, here the expert testified about matters that were readily intelligible. We believe that an average juror can assess intelligently whether an inference of guilt should be drawn from defendant's travelling under the name of "P. Felix" without expert testimony that airline drug smugglers check their bags and buy their tickets under false names to avoid detection. Cf. United States v. ___ ______________ Weiner, 3 F.3d 17, 21-22 (1st Cir. 1993) (error to admit expert ______ testimony of "a routine inference that the jury could draw on its own"). Indeed, in a telling slip of the tongue, the expert -18- himself belied the claim: when asked why smugglers would use false names, he responded, "Well, that's obvious . . . . to avoid being caught." Expert testimony on a subject that is well within the bounds of a jury's ordinary experience generally has little probative value. On the other hand, the risk of unfair prejudice is real. By appearing to put the expert's stamp of approval on the government's theory, such testimony might unduly influence the jury's own assessment of the inference that is being urged.4 See Scott v. Sears, Roebuck & Co., 789 F.2d 1052, 1055 (4th Cir. ___ _____ _____________________ 1986) (expert testimony is unfairly prejudicial "when the  ____________________ 4 Defendant relies heavily on language in two Second Circuit decisions that seemed to extend the limits imposed by Rules 702 and 403. In Castillo, 924 F.2d at 1234, the court declared: ________ "[W]e take serious issue with the Government's use of an expert witness to propound the impermissible theory that appellants' guilt could be inferred from the behavior of unrelated persons." Accord United States v. Cruz, 981 F.2d 659, 663 (2d Cir. 1992) ______ ______________ ____ ("[G]uilt may not be inferred from the conduct of unrelated persons."). This pronouncement seems to us too broad to be workable. By definition, even the most acceptable expert testimony concerning the modus operandi of a criminal scheme distills a pattern from the behavior of unrelated persons. In fact, in more recent cases the Second Circuit itself has stressed the narrower grounds of decision in Castillo and Cruz, namely that experts "`cannot be ________ ____ used solely to bolster the credibility of the government's fact- witnesses by mirroring their version of events,'" and that, while the operations of drug dealers is a proper subject for expert testimony, such operations normally must have "esoteric aspects reasonably perceived as beyond the ken of the jury." United ______ States v. Tapia-Ortiz, 23 F.3d 738, 740 (2d Cir. 1994) (quoting ______ ___________ Cruz, 981 F.2d at 664 and citing Castillo, 924 F.2d at 1232); see ____ ________ ___ also United States v. Taylor, 18 F.3d 55, 59 (2d Cir. 1994) ____ _____________ ______ (stressing that "[e]xpert testimony may be used `on some occasions to explain even non-esoteric matters, when the defense seeks to discredit the government's version of events as improbable,'" quoting Cruz, 981 F.2d at 664). ____ -19- evaluation of the commonplace by an expert witness might supplant a jury's independent exercise of common sense"). As we have noted, the trial court enjoys vast discretion in deciding whether to admit expert testimony under Rules 702 and 403. We believe that this evidence was on the very margin of -- and probably beyond -- what is acceptable. But as also noted, Rules 702 and 403 were not raised as grounds of objection below. We conclude that admitting this testimony was not plain error. See Olano, 113 S. Ct. at 1776-78 (plain error requires error that ___ _____ was clear or obvious and affected a substantial right). First, we find the relevant inquiries -- was the jury competent to assess the evidence intelligently without the expert testimony, what is the probative weight of the testimony, what are the risks of prejudice, and which is greater -- to be subtle rather than obvious and clear. Indeed, for this reason it is particularly important for counsel to call to the trial court's attention the bases of such evidentiary challenges so that the court has the opportunity to carefully consider them. Second, without minimizing the risks associated with this testimony, we cannot say that its admission was "`so shocking that [it] seriously affect[ed] the fundamental fairness and basic integrity of the proceedings conducted below.'" Ortiz, 23 F.3d at 26. The _____ admission of this evidence, therefore, does not require reversal in this case. Affirmed. _________ -20-