# United States Court of Appeals

## For the First Circuit

No. 09-1020

TITO ABRANTE,

Petitioner, Appellant,

v.

PETER ST. AMAND, SUPERINTENDENT,
M.C.I. CEDAR JUNCTION,

Respondent, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. William G. Young, U.S. District Judge]

Before

Lynch, Chief Judge,
Stahl, Circuit Judge,
and DiClerico,* District Judge.

Victoria L. Nadel, by Appointment of the Court, for appellant.
Anne Marie Thomas, Assistant Attorney General, with whom
Martha Coakley, Attorney General, and Lincoln S. Jalelian,
Assistant Attorney General, were on brief for appellee.

February 3, 2010

*Of the District of New Hampshire, sitting by designation.

**STAHL**, **Circuit Judge**. Petitioner Tito Abrante seeks habeas review of his 2002 Massachusetts state convictions. The district court orally denied Abrante's habeas petition but granted a certificate of appealability as to all issues. We affirm the district court's denial of habeas relief.

I.

We relate the facts of the underlying crime as they were found by the Massachusetts Appeals Court ("MAC"), supplemented with other record facts that are consistent with the state court's findings. See Lynch v. Ficco, 438 F.3d 35, 39 (1st Cir. 2006). Under AEDPA, we must "'accept the state court findings of fact unless [Abrante] convinces us, by clear and convincing evidence, that they are in error.'" Id. (quoting McCambridge v. Hall, 303 F.3d 24, 26 (1st Cir. 2002) (en banc)); 28 U.S.C. §§ 2254(d)(2) and (e)(1).

In the early morning of December 23, 2000, a series of armed robberies was committed in Springfield, Massachusetts. Abrante's nephew, Fernando Perez, robbed three victims at gunpoint and shot and critically injured a fourth, an off-duty police officer, while attempting to rob him. Abrante drove Perez in Abrante's car from robbery to robbery. He also conceived of the crime spree and provided Perez with a gun.

Both Perez and Abrante were arrested for the string of robberies. While Abrante was in jail, he told four inmates of his

involvement in the crimes.  These inmates eventually informed the police of Abrante's admissions, and two of the inmates, Nelson Maldonado and Jesus Tolentino, testified at Abrante's trial.[1]  All four of the inmates eventually received favorable dispositions of their cases.[2]

On April 11, 2002, a Massachusetts Superior Court jury convicted Abrante of (i) three counts of armed robbery, (ii) four counts of use of a firearm while committing a felony, (iii) armed assault with intent to murder, (iv) armed assault with intent to rob, (v) assault and battery by means of a dangerous weapon, and (vi) discharging a firearm within 500 feet of a dwelling.  The MAC affirmed the convictions, and the Supreme Judicial Court denied Abrante's application for further appellate review.  On April 20, 2006, Abrante filed a motion for a new trial, which the trial judge denied without a hearing.  The MAC affirmed the trial judge's denial of the motion, and no further appellate review was granted.

Abrante filed his petition for habeas corpus on February 4, 2008.  On December 9, 2008, the district court held a hearing and ruled from the bench in favor of respondent.  Abrante then

---

[1]In addition, the government introduced ample corroborating evidence of Abrante's direct involvement in the crimes at issue.

[2]The other inmate informants were Rodolofo Melendez and Miguel Oyola.  According to Abrante, Oyola was unable to make a formal statement because of mental competence issues.

filed an application for a certificate of appealability, which was granted in its entirety.

## II.

On appeal, Abrante makes the following four arguments: (1) the state established an agency relationship with the inmate informants in violation of Abrante's Sixth and Fourteenth Amendment right to counsel; (2) Abrante's right to due process was violated by the admission of inmate informant testimony; (3) Abrante received ineffective assistance of trial counsel; and (4) the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254, is unconstitutional on its face and as applied in this case.

We review de novo the district court's decision to grant or deny habeas relief under AEDPA. O'Laughlin v. O'Brien, 568 F.3d 287, 298 (1st Cir. 2009) (citing Healy v. Spencer, 453 F.3d 21, 25 (1st Cir. 2006)).

The MAC previously adjudicated Abrante's first three federal claims. AEDPA governs these claims and specifies different standards of review for state court conclusions of law and findings of fact. Respecting Abrante's claims that challenge legal conclusions, we may not grant his petition for habeas relief unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C.

§ 2254(d)(1). As to Abrante's challenges to state court findings of fact, habeas relief is only appropriate when the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254 (d)(2). A state court adjudication is "contrary to" clearly established law if the court "'applies a rule that contradicts the governing law set forth' by the Supreme Court or 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [its] precedent.'" Gomes v. Brady, 564 F.3d 532, 537 (1st Cir. 2009) (quoting Williams v. Taylor, 529 U.S. 362, 405-06 (2000)) (alterations in Gomes). An unreasonable application of clearly established federal law occurs if the state court "identifies the correct governing legal principle from the Supreme Court's then-current decisions but unreasonably applies that principle to the facts of the prisoner's case." Aspen v. Bissonnette, 480 F.3d 571, 574 (1st Cir. 2007) (citing Horton v. Allen, 370 F.3d 75, 80 (1st Cir. 2004)). Given this standard, "the state court's decision is not vulnerable unless it evinces some increment of incorrectness beyond mere error." Foxworth v. St. Amand, 570 F.3d 414, 425 (1st Cir. 2009) (citing McCambridge, 303 F.3d at 36). The state court's interpretation or application of federal law must be "objectively unreasonable." Furr v. Brady, 440 F.3d 34, 37 (1st Cir. 2006) (citing Horton, 370 F.3d at 80).

-5-

III.

A. Violation of Right to Counsel Claim

Abrante first claims that the state established agency relationships with inmate informants who then elicited admissions from him without the presence of counsel in violation of his Sixth and Fourteenth Amendment rights. Abrante argues that the MAC's finding that no agency relationship existed between the informants and the police before the informants heard his admissions was an unreasonable factual determination. He also characterizes the MAC's finding as a violation of Supreme Court precedent. We disagree.

We first address Abrante's argument that the state court's decision was based on an unreasonable determination of the facts. In affirming the trial court's denial of Abrante's motion for a new trial, the MAC found that Abrante had provided no evidence of any agreement between the inmate informants and police that existed <u>before</u> the informants heard Abrante's admissions. Commonwealth v. Abrante, No. 06-P-898, 2007 WL 4180256, 876 N.E.2d 1185, at *3 (Mass. App. Ct. Nov. 23, 2007) (table).[3] Under AEDPA, we presume these findings to be correct, and Abrante has not

_____

[3]The MAC appears to have been referring to all four informants. Respondent argues that Abrante's argument applies only to the two testifying informants, but Abrante contends that because elicitation is the prohibited conduct that violates the Sixth Amendment, the argument is relevant to all four inmates. We assume, without deciding, that the government's contact with all four informants is properly at issue.

-6-

offered clear and convincing evidence that would lead us to conclude that they are unreasonable in light of the evidence presented to the state court. 28 U.S.C. §§ 2254(d)(2) and 2254(e)(1).[4]

Abrante argues that Tolentino's bail reduction from $100,000 to $500 and Tolentino's subsequent disappearance[5] show that Tolentino had an agreement with the police to provide information against Abrante. The circumstances Abrante alleges, however, do not show that any agreement existed with the police before Tolentino heard Abrante's admissions about his crimes. Evidence that Tolentino met with Springfield Police Officer Joselito Lozada on January 22, 2002, on matters which Abrante concedes were unrelated to him, is not to the contrary.

As to Maldonado, Abrante offers nothing more than the coincidence that Maldonado was moved to Abrante's cell in November 2001, the same month that the United States Attorney declined to prosecute Maldonado after being informed that Maldonado would be

---

[4]The issue that recently concerned the Supreme Court in <u>Wood</u> v. <u>Allen</u>, No. 08-9156, 2010 WL 173369 (Jan. 20, 2010), is not presented by this case. <u>Id.</u> at *8 (electing not to resolve "how and when" § 2254(e)(1)'s requirement that a petitioner rebut a state court's presumptively correct factual determinations with "clear and convincing evidence" applies in challenges to state court findings of fact under § 2254(d)(2)). Abrante concedes in his brief that he is obliged to establish by clear and convincing evidence that the presumptively correct state court findings were unreasonable.

[5]The final notation in Tolentino's case docket indicates that he may have been deported.

prosecuted by the state. Abrante suggests that the timing of these two events as well as the timing of Perez's trial in that same month and subsequent police requests for information about Abrante from Maldonado "suggests a particularly strong relationship of agency between the state and Maldonado." This is mere speculation.

Abrante also argues that the government solicited evidence about Abrante from Maldonado, Tolentino, and Melendez, and that the MAC's finding that there was no solicitation was unreasonable. First, we must note that the MAC did not make a finding that there was no solicitation. It made no finding at all on this point. Rather, the court concluded that even if it were to "assume, arguendo," that police had told the inmates that they were seeking information about Abrante, Abrante's claim that an agency relationship existed would still fail. Abrante, 2007 WL 4180256, at *3.

Abrante has not offered clear and convincing evidence of any contact between the government and the informants beyond that described by the MAC,[6] and he has similarly failed to demonstrate

---

[6]Abrante's only evidence that police did anything other than ask Maldonado and Melendez whether Abrante had already discussed his case with them is the testimony of defense investigator Philip Kass. Kass testified that Maldonado told him that police had told Maldonado that they could help him with his case if he would talk with them about Abrante. But Kass also testified that Maldonado told him this in English, without an interpreter, even though Maldonado indicated that he would be more comfortable with an interpreter. This is not clear and convincing evidence sufficient to rebut the state court's finding that there was no agreement between the government and Maldonado before Maldonado heard Abrante's admissions.

that the MAC's legal conclusion was an unreasonable application of clearly established federal law. A police officer's asking an inmate whether Abrante had already discussed his case with that inmate does not create an agency relationship that could implicate the Sixth Amendment. See, e.g., United States v. Taylor, 800 F.2d 1012, 1016 (10th Cir. 1986) (holding that "[i]n the absence of any express or implied quid pro quo underlying the relationship between [the informant] and the Government, and in the absence of any instructions or directions by the Government," informant was not a government agent).

We also reject Abrante's argument that the state court's decision was a violation or unreasonable application of Supreme Court precedent. Abrante appears to argue that the state court unreasonably applied United States v. Henry, 447 U.S. 264 (1980), claiming that the facts of this case are analogous. In Henry, the Supreme Court held that the government violated the defendant's Sixth Amendment right to counsel by soliciting a paid government informant "to be alert to any statements made" by certain prisoners with whom he was housed, including the defendant. Id. at 266. Abrante argues that "[j]ust as in Henry, inmates here, knowing what the government sought to learn, initiated and held conversations

---

As for Tolentino, there is no evidence that police approached him about Abrante's case. The record reflects that after his January 2002 meeting with Officer Lozada, Tolentino "learned that the police were looking for people to testify against [Abrante]," but it is unclear how he came by that information.

-9-

with Abrante in violation of the Sixth Amendment."  But Abrante neglects the fact that in this case, unlike in Henry, there is no evidence that the government had established an informant relationship with the inmates that pre-dated the inmates' conversations with Abrante.  See id. at 270 (informant was acting under instructions as a paid informant for the government); see also Maine v. Moulton, 474 U.S. 159, 163, 176-77 (1985).  Here, as discussed above, the state court did not make such a finding, and Abrante has not offered clear and convincing evidence to the contrary.[7]

## B. Due Process Claim

Abrante next argues that his right to due process was violated when Tolentino and Maldonado were permitted to testify despite alleged evidence that their testimony was untruthful.  The MAC found that "[Abrante's] assertion that the government knew that the informants committed perjury is mere conjecture and not supported by the evidence."  Abrante, 2007 WL 4180256, at *3.

---

[7]Abrante makes an additional argument that the appeals court further engaged in an unreasonable application of clearly established federal law when it "drew two diametrically opposed conclusions: either that this was a case where the police told inmates to 'keep their ears open' OR this was a case where the conversations occurred prior to any contact with police." (emphasis in original).  As discussed supra, the court did not reach a conclusion regarding whether police told the informants that they were seeking information about Abrante.  Moreover, it is unclear how a court could engage in an unreasonable application of clearly established federal law merely by assuming a fact for the sake of argument.

-10-

Abrante has failed to demonstrate that this conclusion was objectively unreasonable.

The governing law in this area, as set forth by the Supreme Court in Napue v. Illinois, 360 U.S. 264 (1959), is that the government may not knowingly use false evidence, including false testimony, to obtain a conviction. Id. at 269. Abrante argues that the MAC unreasonably applied Napue, but this argument must fail.[8] Abrante engages in a series of speculations in support of his view that Tolentino and Maldonado gave false testimony,[9] but

_____

[8]Abrante also claims that the MAC's decision was contrary to Arizona v. Fulminante, 499 U.S. 279 (1991), but as he has offered no explanation as to why that case applies to these facts, we consider this argument waived. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).

[9]Abrante claims that the evidence in the state court proceedings failed to establish a trusting relationship between Abrante and the informants, despite the fact that they were housed in close proximity. He then states that some of the informants spoke of a fear of Abrante and concludes, "[l]ogically, if they feared him, they did not share his confidence and they would not have spent time alone with him."
Abrante also notes that none of the informants testified in Fernando Perez's trial in November 2001. He speculates that their failure to come forward prior to Perez's trial is an indication that they fabricated confessions after learning that the government wanted information about Abrante.
Additionally, Abrante suggests that the testimony was false because, he claims, it did not match eyewitness accounts or the defendant's own words.
Finally, Abrante claims that Maldonado and Tolentino's testimony against Abrante was manufactured based on notes that Melendez made after his first conversation with police about Abrante. Melendez later turned these notes over to detectives. Unlike Melendez's subsequent statement, dated February 14, 2002, these notes, dated January 24-26, were written in Spanish, and thus potentially readable by Tolentino and Maldonado, neither of whom could read English. Abrante claims that a phrase used by both Tolentino and Maldonado at trial ("kill that cabron") came directly

-11-

he offers no evidence that would lead to the conclusion that the government _knew_ that the testimony was allegedly false. Thus, Abrante has not met his burden of showing that the MAC's conclusion was unreasonable.

Abrante appears to make two additional arguments under the heading of his due process claim. First, he argues that Tolentino and Maldonado's testimony should have been excluded because it was significantly more prejudicial than probative and admitting it rose to the level of a constitutional violation. Second, Abrante notes, yet again, that the informants received favorable treatment after providing evidence in his case. Abrante appears to be arguing, though he does not articulate the argument, that the government violated his due process rights by failing to disclose the extent of the rewards which the informants actually obtained for their testimony.

As to the first argument, Abrante is challenging the application of a state evidentiary rule, and in habeas jurisdiction, our review of such challenges is severely limited. "To be a constitutional violation, a state evidentiary error must

from Melendez's notes. According to Abrante, the notes were produced in discovery, and available to Tolentino and Maldonado. However, it is not clear from the record that either Tolentino or Maldonado ever saw these notes. Maldonado testified that he neither looked at any of the paperwork from Abrante's case, nor did Abrante read any of it to him. Tolentino testified that Abrante showed him Melendez's "statement," but it is unclear whether he was referring to the English statement of February 14, 2002, or the Spanish notes of January 24-26.

-12-

so infuse the trial with inflammatory prejudice that it renders a fair trial impossible." Petrillo v. O'Neill, 428 F.3d 41, 44 n.2 (1st Cir. 2005) (citing Subilosky v. Callahan, 689 F.2d 7, 10 (1st Cir. 1982)). Given the probative value of Abrante's admissions, as well as the extensive cross-examination of the informants conducted by Abrante's trial counsel, we see little to indicate that the informants' testimony so infused the trial with inflammatory prejudice as to render a fair trial impossible.

As to the second argument, the MAC found that Abrante's trial counsel extensively cross-examined the testifying informants as to the favorable treatment that they hoped to receive in exchange for their testimony. See Abrante, 2007 WL 4180256, at *3. The court also found that the government did not fail to disclose evidence of bias. Id. This was not an unreasonable conclusion, and Abrante has not produced clear and convincing evidence of any promises or rewards provided by the government to the informants before they testified.

C. Ineffective Assistance Claim

Abrante next argues that he received ineffective assistance of counsel at trial. The MAC rejected this claim, stating the "[n]o ineffective assistance can arise if the trial lawyer did not commit any errors," and then found that Abrante's trial counsel was not ineffective as he did not overlook meritorious arguments. Abrante, 2007 WL 4180256, at *4.

To prevail on an ineffective assistance claim, a criminal defendant must demonstrate both: (1) deficiency -- that trial counsel's performance "fell below an objective standard of reasonableness"; and (2) prejudice -- that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 688, 694 (1984). A lawyer's performance is considered deficient "only where, given the facts known at the time, counsel's choice was so patently unreasonable that no competent attorney would have made it." Knight v. Spencer, 447 F.3d 6, 15 (1st Cir. 2006) (internal quotations omitted).

Because Abrante's ineffective assistance claim is subject to AEDPA's deferential standard of review, he must not only establish counsel's ineffectiveness under Strickland, but must also demonstrate that the state court's denial of his claim was objectively unreasonable. Abrante cannot meet this burden.

Abrante asserts three grounds for his ineffective assistance claim: (1) counsel should have filed a motion to suppress inmate informant testimony on Sixth Amendment grounds; (2) counsel should have filed a motion to exclude the statements of Tolentino and Maldonado based on "Massachusetts evidentiary standard 403 and due process concerns"; and (3) counsel should have argued "important issues related to joint venture."

-14-

Abrante does not argue the first two grounds; rather, he refers to the previous two sections of his brief and the arguments made therein, which we have discussed supra. As Abrante does not attempt to explain how counsel's failure to file either of the two motions meets the Strickland standard for deficiency and prejudice, we could consider the argument waived, Zannino, 895 F.2d at 17, but in any event, our prior discussion disposes of these two issues.

Abrante's third contention pertains to the admission of Perez's confession at Abrante's trial as a statement in furtherance of their joint venture. Abrante argues that trial counsel was ineffective for failing to "address the lack of an evidentiary standard" for joint venturers' statements in Massachusetts when he moved to exclude the statement. Specifically, Abrante appears to argue, as he did to the MAC, that once Perez's statement was admitted as reliable, trial counsel should have challenged Perez's reliability as a declarant.

Notably, Abrante challenged the admission of Perez's statement in his direct appeal, and the MAC affirmed its admission. Commonwealth v. Abrante, No. 03-P-651, 2004 WL 2480390, 817 N.E.2d 339, at *4 (Mass. App. Ct. Nov. 4, 2004) (table). Abrante again challenged the admission of the statement in his collateral appeal, specifically arguing that it lacked reliability, and the appeals court again rejected his claim, finding that there was no need for

-15-

an independent showing of reliability.  <u>Abrante</u>, 2007 WL 4180256, at *4.

Abrante's counsel could not have rendered ineffective assistance in failing to address alleged errors of state evidentiary law that were either non-prejudicial or nonexistent. <u>Knight</u>, 447 F.3d at 16.  Therefore, Abrante's counsel was not ineffective for failing to challenge the reliability of Perez's statement.

D. Challenge to AEDPA's Constitutionality

Finally, Abrante argues that AEDPA violates his right to petition the government for redress of grievances under the First Amendment by preventing federal review of constitutional issues of first impression decided by state courts.

Abrante premises this argument on his claim that the constitutional issues presented in his habeas petition are issues of first impression.  This assertion is incorrect.  The issues raised by Abrante fall well within the bounds of established Supreme Court precedent, and, as we have held, "[t]he Constitution is not offended when lower federal courts are prevented from substituting for that of a state court their judgment as to reasonable application of Supreme Court precedent." <u>Evans</u> v. <u>Thompson</u>, 518 F.3d 1, 8 (1st Cir. 2008).

Thus, the issues Abrante raises do not present us with the opportunity to consider his constitutional challenge to AEDPA.

IV.

For the foregoing reasons, we affirm the district court's denial of the habeas petition.

Affirmed.