William **POWERS**, Petitioner,

v.

Steven **O'BRIEN**, Superintendent of Old Colony Correctional Center, Respondent.

Civil Action No. 07–11591–JLT.

United States District Court, D. Massachusetts.

July 29, 2010.

457

William Powers, Bridgewater, MA, pro se.

Susanne G. Reardon, Office of the Attorney General, Boston, MA, for Respondent.

*ORDER*

TAURO, District Judge.

This court ACCEPTS and ADOPTS the July 14, 2010 Report and Recommendation [# 39] of Chief Magistrate Judge Dein. For the reasons set forth in the Report and Recommendation, this court hereby orders that Petitioner's Petition for Writ of Habeas Corpus [# 1] is DENIED.

This case is CLOSED.

IT IS SO ORDERED.

***REPORT AND RECOMMENDATION ON PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2254***

DEIN, United States Magistrate Judge.

## I. *INTRODUCTION*

Following his conviction by a Suffolk County jury, petitioner William Powers ("Powers" or the "defendant") was sentenced on March 25, 2003 to seventeen to twenty years in prison for manslaughter (Mass.Gen.Laws. ch. 265, § 13), a consecutive term of five to eight years in prison on one count of operating a motor vehicle under the influence of alcohol and causing bodily injury (Mass. Gen. Laws ch. 90, § 24L), and a consecutive term of four to five years in prison on another count of OUI causing injury.[1] His motion for a new trial was denied on September 8, 2005, and his direct appeal was consolidated with the appeal from the denial of his motion for a new trial. The denial of his motion for a new trial and his convictions were affirmed by the Massachusetts Ap-

1. A charge of operating a motor vehicle negligently (Mass. Gen. Laws ch. 90, § 24) was dismissed before trial, and a conviction for vehicular homicide (Mass. Gen. laws ch. 90, § 24G) was vacated and the indictment dismissed as duplicative of the manslaughter indictment.

peals Court in an unpublished opinion. *Commonwealth v. Powers*, 67 Mass.App. Ct. 1105, 853 N.E.2d 220, 2006 WL 2472911 (Mass.App.Ct. Aug. 28, 2006).[2] Powers then filed an application for leave to obtain further appellate review ("ALO-FAR") with the Massachusetts Supreme Judicial Court ("SJC"). (SA Ex. 6). The application was denied without opinion on November 2, 2006. *Commonwealth v. Powers*, 447 Mass. 1112, 856 N.E.2d 182 (2006) (table) (SA Ex. 7).

Powers filed a timely *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 raising a number of grounds for relief. Following the court's rulings on two motions to dismiss (*see* Docket Nos. 18, 28), the remaining claims are that Powers' convictions should be reversed because trial counsel provided ineffective assistance of counsel at sentencing by failing to file a sentencing memorandum and provide relevant mitigating information to the court, and by failing to object to the judge's questioning of a defense expert about his credentials in front of the jury. For the reasons detailed herein, this court finds that the state courts' rulings on these issues were not contrary to or an unreasonable application of Supreme Court law. Therefore, this court recommends to the District Judge to whom this case is assigned that the Petition for a Writ of Habeas Corpus be DENIED.

**2.** The Commonwealth has filed a Supplemental Answer ("SA") containing the record below as Docket No. 11. The Appeals Court decision can be found at SA Ex. 5.

**3.** In addition to the Supplemental Answer ("SA") containing the record below, the Government has filed a transcript of the sentencing hearing ("Sent. Tr.") as a Further Supplemental Answer (Docket No. 34). The Petitioner has also submitted a Supplemental Appendix ("Pet. App.") containing an affidavit, excerpts from the record below, and

## II. STATEMENT OF FACTS [3]

### The Underlying Crime

Powers' conviction arises out of a serious car accident which took place during the early morning hours of August 12, 2001 in South Boston. The Appeals Court summarized the relevant facts as follows [4]:

> This case arose as a result of a serious automobile accident in which the defendant, driving while intoxicated at a speed of approximately seventy miles per hour, collided with a vehicle driven by Lily Paquette, with passengers Gennes Seaton, Linda Stevens, Amber Seaton, and the decedent Sean Waters also in the vehicle. Numerous witnesses testified to hearing the vehicle the defendant was driving approach, to seeing it drive by at an extremely high rate of speed, and to hearing the collision.

> The parties involved in the collision were taken to various hospitals; Waters did not survive. The defendant was interviewed twice by police, and the second interview was recorded on audio tape. The statements of the defendant, including his admission that he had been the driver of the car, were admitted at trial.

*Powers*, 2006 WL 2472911, at *1.

### Questioning of Defense Expert

Powers submitted the testimony of John Michael Orlowski, an accident reconstruction expert. Mr. Orlowski testified that

medical records and correspondence he contends trial counsel improperly failed to bring to the trial judge's attention during sentencing (Docket No. 38).

**4.** The state trial and appellate courts' findings of fact are entitled to a presumption of correctness under 28 U.S.C. § 2254(e)(1). *See Gunter v. Maloney*, 291 F.3d 74, 76 (1st Cir. 2002); *Rashad v. Walsh*, 300 F.3d 27, 35 (1st Cir.2002). Unless otherwise indicated, the facts are not in dispute.

the victims' vehicle was traveling faster than the defendant's vehicle at the time of the collision, and otherwise challenged the speed calculations and sequence of events testified to by the Commonwealth's expert. (*See* SA Ex. 2 at 20–21). A voir dire of Mr. Orlowski's credentials was held outside the hearing of the jury. (Pet. App. at 015). During the voir dire, Mr. Orlowski testified that he had obtained a bachelor of science in mechanical engineering from LaSalle University in March 1998. (*Id.* at 017). There was no further inquiry by any party or the court about his attendance at LaSalle.

When Mr. Orlowski was called to the stand, he again testified that he had obtained a bachelor of science degree in mechanical engineering from LaSalle University. (*Id.* at 035). The court then inquired where LaSalle was located, and Mr. Orlowski responded Mandeville, Louisiana. (*Id.* at 036). Defense counsel then inquired about the witness's membership in any professional organizations and his work experience as an engineer and in accident reconstruction, as well as his publications. (*Id.* at 36–38). As noted above, he gave his opinion as to how the accident happened, and disagreed with the analysis undertaken by the Commonwealth's expert, Officer Whalen. There was extensive cross-examination by the Commonwealth. (*Id.* at 051–74). While the prosecutor challenged Mr. Orlowski's experience, the examination did not touch upon his educational background. Defense counsel then conducted his redirect examination. (*Id.* at 074–078). When all counsel were done, the following colloquy took place:

> THE COURT: I have just a couple of questions for you, sir, because I think I missed something along the line. You got a degree from LaSalle University, sir?
>
> THE WITNESS: Yes.

THE COURT: And where is that located?

THE WITNESS: Mandeville, Louisiana.

THE COURT: Mandeville?

THE WITNESS: Mandeville,—A–N–D–E–V–I–L–L–E.

THE COURT: And tell me, what year did you get that in?

THE WITNESS: 1998.

THE COURT: 1998, now, you've been involved in the engineering business, et cetera, for what, ten or fifteen years?

THE WITNESS: I've been involved since—I obtained my professional engineering license in New York State in 1978.

THE COURT: Okay.

THE WITNESS: The requirement, your Honor, was a bachelor of science [or] the equivalent in education and experience.

THE COURT: Where was that?

THE WITNESS: New York State Licensing Board allowed me to sit for the examination.

THE COURT: Let me ask you this question. While you were at the university, were you able to take four years out of your work to go down to LaSalle?

THE WITNESS: No, that's a distance learning college.

THE COURT: It's a what?

THE WITNESS: A distance learning college.

THE COURT: A distance learning college.

THE WITNESS: Yes.

THE COURT: Does that mean that you do things in the mail?

THE WITNESS: That is correct.

THE COURT: So, it's like a mail order college?

THE WITNESS: I wouldn't call it a mail order, your Honor, it's a distance learning. It was through the mail, yes.

THE COURT: So, they sent things to you, and you'd send it back to them?

THE WITNESS: Correct.

THE COURT: How many years did you have to do your correspondence back and forth?

THE WITNESS: About four to five years.

THE COURT: Did you ever go to Louisiana?

THE WITNESS: No.

THE COURT: You just sent letters there?

THE WITNESS: Correct.

THE COURT: Thank you, sir.

THE WITNESS: You're welcome.

THE COURT: Counsel, any further questions further for the witness?

(*Id.* at 078–81). There being no further questions, the witness was excused.

The defendant claimed that his counsel's failure to object to this exchange constituted ineffective assistance of counsel and warranted a new trial. In denying the motion for a new trial, the trial judge explained as follows:

The defendant's appellate counsel argues that trial counsel should have objected to the Trial Judge questioning the defendant's claimed expert. The alleged expert was a John Orlowski, who held himself out on voir dire as, "a certified safety professional in engineering aspects." Vol. VI, p. 145, l. 7–8. He alleged in voir dire that he was an expert in "fall down accidents," "construction site accidents," "defective products," "structural failures," and automobile accident reconstruction. He testified that he had graduated from LaSalle University, but did not indicate where it was located. Up to that time in Mr. Orlowski's voir dire testimony, he spoke in a clear and strong voice. However, when he mentioned LaSalle University, he lowered his voice as if to muffle it. The Court then said to him "LaSalle, sir," to which Mr. Orlowski answered "yes sir." The Court then simply asked the witness where the school is located and he responded "Mandeville, Louisiana." While the court was familiar with the accredited and respected LaSalle University in Philadelphia, Pennsylvania, it had never heard of LaSalle University in Mandeville, Louisiana.

The selling of degrees by LaSalle University, Mandeville is dealt with in two U.S. General Accounting Office Reports: (1) GAO–771T, dated May 11, 2004, and (2) GAO–03–269 R dated November 21, 2001. Page seven and eight of GAO–771T, contain reports concerning the selling of degrees by LaSalle University. Four principals from LaSalle University were convicted in the United States District Court for the District of Louisiana for mail fraud, wire fraud and money laundering in connection with its sale of degrees and their operation of LaSalle University. LaSalle University in Mandeville, Louisiana is no longer operating.

The questioning of Mr. Orlowski by the Court was very brief and non-confrontational. Vol. VI, p. 207, l. 23 to p. 210, l. 9. The defendant's appellate attorney indicates in his memorandum that the witness was ridiculed. During the brief questioning by the Court, it was merely established that all his contact with LaSalle University was through the mail, that he never visited Mandeville or LaSalle University and that it was a "distance learning school." The Court has ordered a copy of the Court Reporter's tape for the Court's brief colloquy with Mr. Orlowski and has reviewed it to assure its authenticity. The Court is submitting this tape recording to the Clerk so that it may be marked for

identification, made a part of the record, and be available if the reviewing appellate court wishes to review it. A copy of said tape is also being provided to both counsel.

(Memorandum and Order on Defendant's Motion for a New Trial (included in SA Ex. 3) at R. 30–31).

The Massachusetts Appeals Court also rejected Powers' objection to the trial judge's questioning. While recognizing that "the better practice would have been for the judge to resolve the issue in its entirety in the prior voir dire hearing" the Court went on to hold that "the judge's questioning was proper in order to clarify an incongruity in the timeline of the witness's career, to wit, that the witness had been working for a number of years in the northeast, but during this time, had obtained his degree from an institution in Louisiana. This attempt to clarify a confusing point was within the judge's discretion." *Powers*, 2006 WL 2472911, at *3 & n. 5.

### *Presentation at Sentencing*

After the verdict came down and the jury was excused, the trial judge set a date for sentencing. Defense counsel asked the court if it would consider ordering "a brief, or at least a summary probation report for the defendant" which "would be useful to the Court in determining the background." (Pet. App. at Ex. E, p. 107). The following colloquy then occurred:

THE COURT: I think I've got a pretty decent idea. I've got his entire criminal record, the 35 criminal convictions he has had up to age 29 as an adult.

MR. TARDIF: Yeah, but that's the record. Can the probation department look into other issues that have developed since the accident? He has developed some physical matters that might be of some—

THE COURT: Why don't you do this. Why don't you prepare a memorandum

and tell us, and if you wish to present that in an affidavit, by all means, that will be just fine.

MR. TARDIF: We'll do that. Thank you, your Honor.

THE COURT: That would be fine, so we'll see everybody here on Tuesday at nine o'clock....

(*Id.* at 107–08).

At sentencing, counsel did not submit any affidavits, although he did provide information about the defendant's background. Counsel argued strenuously that the Commonwealth's recommendation was "excessive" and "Draconian," and that consecutive sentences were inappropriate. (Sent. Tr. at 39–40). In particular, he argued that consecutive sentences would preclude Powers from "seeking the opportunity of psychological redevelopment and alcohol programming" and would be inappropriate because all of the convictions arose out of one incident. (*Id.* at 40). He also argued that the defendant's criminal record was not as serious as it appeared as a number of the charges were subsumed in other charges. (*Id.* at 41). Defense counsel tried to address Powers' seeming lack of remorse following the accident and provided the court with reports from psychological counselors at the hospital. (*Id.* at 41–42). He stressed that Powers had been diagnosed with Post Traumatic Stress Disorder and was a man who "has a conscious." (*Id.* at 42). Counsel provided information about Powers, and stressed that he was an alcoholic and had had trouble with the law, but that he had started to turn his life around and was in a stable relationship and had just had a child. (*Id.* at 43–44). Counsel argued that on the night of the accident, Powers thought he was in control and wasn't going to drink, but found that he could not stop the drinking and "[h]orrible events followed" for which he apologized. (*Id.* at 44).

The trial judge focused on the senselessness of the death that occurred after a night of more than excessive drinking, and on the defendant's extensive criminal record. (*Id.* at 45–46). He also considered the victim statements which showed the court "the tremendous, overwhelming loss of what people have suffered due to the actions of the defendant here." (*Id.* at 47).

The trial judge also filed a sentencing memorandum explaining his sentence. (SA Ex. 3 at R. 33–44). As he wrote in part:

Here, Mr. Powers, now age 31, has never had a full-time job for any significant time. His counsel indicated at the sentencing hearing that he has been an alcoholic since his early teen years. He lives part-time with his mother and part-time with one of his girlfriends. Mr. Powers has absolutely no respect for the law and his requirement to obey it. His thirty-six convictions, before being convicted on these three indictments are reflections of his character and lack of respect for the law. His thirty-six convictions include five involving the use of dangerous weapons, sixteen convictions involving larceny or stolen property and five involving, in part, the use of an automobile. He is a professional "B and E" man with seven such convictions.

The Court believes that Mr. Powers at age 31, has little or no rehabilitation possibilities. His criminal record together with the circumstances of these present three convictions, gives this Court the impression that the only deterrence that will work with Mr. Powers is his incarceration. The facts surrounding these three convictions are spelled out in detail so it will be known what outrageously wanton and reckless conduct that the defendant was involved in when he killed Sean Waters and so seriously and permanently injured Lillie Paquette and Amber Seaton. Powers, with a .24 blood alcohol (three times the

legal limit) drove down E Street at 70 MPH through three stop signs and into the intersection with West Broadway. Power's two passengers were telling him to slow down. Powers was not to be stopped, until he crashed into the car in which Sean Waters, Lillie Paquette and Amber Seaton were riding. Powers killed Sean Waters and caused devastating and permanent injuries to Lillie Paquette and Amber Seaton. After the accident, Powers and his friends made up the story that he was not driving, but that a Paul Martin was driving. Powers did not know where he lived, but that he just "hung out on Southie." After an intensive investigation by Boston Police Sargent [sic] Detective Daniel Keeler and Boston Police Detective Robert Kenney, Powers admitted that Martin was not driving the car, but that he, Powers, was driving it.

Therefore, the Court has considered (1) the nature and seriousness of these three crimes which Powers has been convicted of; (2) his prior adult record of convictions; (3) the defendant's conduct surrounding the commission of the subject crimes involved in this case; and (4) reliable evidence of prior misconduct of the defendant in the crimes for which he has been convicted (not to punish the defendant, but only on the issue of the defendant's character and amenability to rehabilitation) . . . .

(*Id.* at R. 41–43).

Powers has submitted an affidavit from his mother to this Court, dated November 10, 2009, wherein she attests that she did not testify at sentencing because she suffered from anxiety issues, and had not been given advance warning by defense counsel that she was going to be called. (Pet. App. at Ex. J, Affidavit of Elaine T. Powers at ¶¶ 1–9). She would have testified if called that the defendant had been

an alcoholic since his teens, grew up in a family of alcoholics, and had suffered from mental health issues since age 3. (*Id.* at ¶¶ 10–19). She also would have testified that when he was not drinking, her son was "a good person and a good father." (*Id.* at ¶ 20). Powers has also submitted a letter dated November 2, 2009 from Kathleen Crowley, a friend for 27 years, who states that if she had been called as a witness at sentencing she would have testified that Powers had been very kind to her and her mother, who died of cancer, and that when Powers was sober he was kind, caring and "a great guy." (Pet. App. at Ex. J, p. 235). He has submitted other letters from friends and family members [5] asserting that the sentence was too harsh, that Powers was an alcoholic with mental health issues, and that he was a kind and caring person. (*Id.* at 237–41).

The Appeals Court rejected Powers' contention that his counsel was ineffective at sentencing. After reviewing counsel's argument, the Court held that "the judge's extremely thorough sentencing memorandum makes clear he considered the 'total picture' of the defendant's history and rehabilitative prospects prior to imposing his sentence. It is highly unlikely that had counsel presented the evidence the defendant now claims went unused, such evidence would have had even scant impact on the judge's decision." *Powers,* 2006 WL 2472911, at *3.

Additional facts will be provided below where appropriate.

### III. *ANALYSIS*

#### A. *Standard of Review*

##### 1. *AEDPA*

The standard of review to be applied to Powers' habeas corpus petition is set forth

in 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Under this standard, a federal habeas court may not grant a writ of habeas corpus unless the underlying state court adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

As the United States Supreme Court has explained:

> A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts.... The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case.

*Bell v. Cone,* 535 U.S. 685, 694, 122 S.Ct. 1843, 1850, 152 L.Ed.2d 914 (2002).

If the state court decision was not "contrary to" federal law as defined by the Supreme Court, the habeas court must then determine "whether the state court ruling was an 'unreasonable application' of the Court's precedent." *Vieux v. Pepe,* 184 F.3d 59, 65–66 (1st Cir.1999). An "unreasonable application is different from an incorrect one." *Bell,* 535 U.S. at 694, 122 S.Ct. at 1850. In order to reach the level of "unreasonable," "some increment

---

5. It appears that at least some of these letters were submitted during Powers' state appellate process.

of incorrectness beyond error is required." *McCambridge v. Hall*, 303 F.3d 24, 36 (1st Cir.2002) (en banc) (internal quotation and citation omitted). This "increment need not necessarily be great, but it must be great enough to make the decision unreasonable in the independent and objective judgment of the federal court." *Id.* Thus, "a habeas petitioner must do more than merely identify an incorrect result." *Jackson v. Coalter*, 337 F.3d 74, 81 (1st Cir. 2003). "Rather, that application must also be unreasonable." *Williams v. Taylor*, 529 U.S. 362, 411, 120 S.Ct. 1495, 1522, 146 L.Ed.2d 389 (2000). *See also Abrante v. St. Amand*, 595 F.3d 11, 15 (1st Cir.2010), and cases cited.

### 2. *Ineffective Assistance of Counsel*

Powers contends that he was denied effective assistance of counsel in violation of his constitutional rights. In particular, Powers challenges his trial counsel's failure to object to the court's colloquy with his expert regarding his attendance at La-Salle, and his counsel's failure to submit additional evidence at the sentencing stage. The Massachusetts Appeals Court, cited, without extended discussion, *Commonwealth v. Saferian*, 366 Mass. 89, 96, 315 N.E.2d 878, 882–83 (1974), and concluded that counsel had not committed any errors and was not ineffective. *Powers*, 2006 WL 2472911, at *2–3. This determination was neither contrary to nor an unreasonable application of Supreme Court law.

As the First Circuit recently explained: To prevail on an ineffective assistance claim, a criminal defendant must demonstrate both: (1) deficiency—that trial counsel's performance "fell below an objective standard of reasonableness"; and (2) prejudice—"that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668,

688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). A lawyer's performance is considered deficient "only where, given the facts known at the time, counsel's choice was so patently unreasonable that no competent attorney would have made it." *Knight v. Spencer*, 447 F.3d 6, 15 (1st Cir.2006) (internal quotation omitted).

*Abrante*, 595 F.3d at 19. "A defendant's failure to satisfy one prong of the *Strickland* analysis obviates the need for a court to consider the remaining prong." *Knight*, 447 F.3d at 15. *Accord Malone v. Clarke*, 536 F.3d 54, 63–64 (1st Cir.2008).

In assessing whether a state court's decision is "contrary to" Supreme Court decisions, it is not necessary that the state court cite to, or even be aware of, federal cases, "so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8, 123 S.Ct. 362, 365, 154 L.Ed.2d 263 (2003). The standard set forth in the Massachusetts case of *Commonwealth v. Saferian* is "the functional equivalent of the *Strickland* standard." *Mello v. DiPaulo*, 295 F.3d 137, 145 (1st Cir.2002). Since the *Powers* court relied on *Saferian*, "the state court did not apply a legal rule that contradicts an established Supreme Court precedent." *Malone*, 536 F.3d at 63. Rather, the issue presented here is whether "the state court unreasonably applied clearly established Federal law, as determined by the Supreme Court" by applying the correct legal principles "to the facts of the case in an objectively unreasonable manner[.]" *Id.* As detailed below, applying these principles to the instant case compels the conclusion that Powers' habeas petition be denied.

### B. *Questioning of the Witness*

██ The Massachusetts Appeals Court concluded that it was not improper for the

trial judge to question the defendant's expert about his education. The same conclusion would have been reached if the court had applied clearly established federal law. Since the trial judge did not engage in objectionable behavior, it was not ineffective assistance of counsel for Powers' trial counsel not to object to the questioning by the trial judge.

As Powers argues, "the Due Process Clause clearly requires a fair trial in a fair tribunal, before a judge with no actual bias against the defendant or interest in the outcome of his particular case." *Bracy v. Gramley*, 520 U.S. 899, 904–05, 117 S.Ct. 1793, 1797, 138 L.Ed.2d 97 (1997) (internal quotations and citations omitted). However, in the instant case, Powers "has not presented a minimal factual basis for an inference of lack of impartiality." *United States v. Lopez*, 944 F.2d 33, 37 (1st Cir. 1991). Rather, the trial judge's questioning was straightforward and limited. While it disclosed information that the defendant may not have liked, the information about the witness' educational background was not distorted by the judge or otherwise objectionable in any way.

Under Supreme Court precedent, "[a]t trial, the district judge has the responsibility of ensuring its proper conduct and determining questions of law. The district judge has the power to question witnesses, but while the judge may analyze and dissect the evidence, he may not either distort it or add to it. The trial judge may, if he deems necessary, examine witnesses in order to provide a clear presentation of the issues, so long as an attitude of impartiality is preserved." *United States v. Gonzalez–Torres*, 980 F.2d 788, 791–92 (1st Cir. 1992) (citing, *inter alia*, *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *Quercia v. United States*, 289 U.S. 466, 53 S.Ct. 698, 77 L.Ed. 1321 (1933)) (additional internal citations, punctuation and quotations omitted). In the instant case, the state court concluded, in effect, "that the questioning fell within the judge's role as moderator of the trial. It was conducted by the district judge to clarify a very confusing sequence of events." *Gonzalez–Torres*, 980 F.2d at 792. This conclusion was not an unreasonable application of clearly established Federal law.

A careful review of the transcript establishes that the trial judge did not "cross the line" and that his participation remained "balanced"; he did not "become an advocate or otherwise use his judicial powers to advantage or disadvantage a party unfairly." *Logue v. Dore*, 103 F.3d 1040, 1045 (1st Cir.1997). The trial judge acted within his "wide discretion to interject questions in order to throw light upon testimony or expedite the pace of a trial." *Id.* Since there was no error in the judge's questioning which was designed to explain a confusing time-line in the expert's testimony, it was not ineffective assistance of counsel to fail to object to the questioning.

### C. *Argument at Sentencing*

 Powers objects to trial counsel's failure to submit additional evidence at sentencing, including "his employment history, a detailed discussion of his past psychiatric treatment and problems, his family life and background, detailing the loss of his biological father when he was young, and the separation from his step-father after the divorce [from] his mother," and his "volunteer work at a youth center and caring for a neighbor suffering from cancer." (Pet. Mem. (Docket No. 36) at 17). He also challenges counsel's alleged failure to suggest any alternatives to the court, "such as conditions of probation associated with severe suspended sentence" or alcohol treatment. (*Id.*). The Appeals Court concluded that counsel had made a "strong and thorough" argument at sentencing and

that there was no evidence of prejudice to the defendant as a result of counsel's actions. *Powers*, 2006 WL 2472911, at *3. The state court's conclusion was not an unreasonable application of Federal law.

As an initial matter, while trial counsel did indicate to the trial judge that he might submit a memorandum regarding some "physical matters" relating to the defendant that "have developed since the accident," there is nothing in the record to indicate what such matters may be. (*See* Pet. App. at Ex. E p. 107). Powers has not identified any such information which counsel allegedly did not submit. Thus, Powers' generalized objection to counsel's failure to file a memorandum does not rise to the level of an ineffective assistance of counsel claim.

Similarly, despite Powers' claim that counsel did not give the court "alternatives," counsel did argue to the court that Powers should have the opportunity to participate in "psychological redevelopment and alcohol programming" while incarcerated. (*See* Sent. Tr. at 40). While this argument did not sway the trial judge, Petitioner's claim that counsel was ineffective for failure to provide alternatives is not supported by the record.

■ Finally, the record supports the state court's conclusion that counsel was not ineffective. It is undisputed that "[s]entencing is a critical stage of the criminal proceeding and the defendant is entitled to the aid of counsel in marshaling the facts, introducing evidence of mitigating circumstances and in general aiding and assisting the defendant to present his case as to sentence." *Commonwealth v. Cameron*, 31 Mass.App.Ct. 928, 930, 577 N.E.2d 1016, 1018 (1991) (internal quotation, punctuation and citations omitted). That does not mean, however, that every fact regarding the defendant must be introduced. Even in a capital case, there are circumstances when presenting no mitigating evi-

dence and waiving final argument may be appropriate. *See Bell*, 535 U.S. at 701–02, 122 S.Ct. at 1853–54. In the instant case, trial counsel did submit evidence of Powers' psychological history and alcoholism. All of the additional evidence that Powers wanted trial counsel to submit stressed that he was a wonderful person *when sober*. It was clear that the trial judge was not persuaded by or sympathetic to Powers' troubled history and alcohol abuse— rather, he concluded that such a past meant that Powers had "little or no rehabilitation possibilities." (SA Ex. 3 at R. 42). Trial counsel cannot be faulted for failing to introduce additional evidence of Powers' troubled and alcoholic past.

As detailed in his sentencing memorandum quoted above, the trial judge found it compelling that, among other things, Powers had engaged in "outrageously wanton and reckless conduct" the night of the accident, that he had "made up a story" about not being the driver, and that he had an extensive and serious adult record of convictions. (*Id.*). None of the evidence that Powers contends was omitted would mitigate these facts that the trial judge found compelling. "In the absence of a showing that a different result might have been attained, we cannot say that counsel's performance was ineffective." *Commonwealth v. Campiti*, 41 Mass.App.Ct. 43, 71, 668 N.E.2d 1308, 1325 (1996) (internal quotation omitted). The Appeals Court was not clearly erroneous when it concluded that trial counsel had presented a "strong and thorough" argument and that "[i]t is highly unlikely that had counsel presented the evidence the defendant now claims went unused, such evidence would have had even scant impact on the judge's decision." *Powers*, 2006 WL 2472911, at *3.

Under *Strickland*, a habeas court "must indulge a 'strong presumption' that counsel's conduct falls within the wide range of

reasonable professional assistance because it is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight." *Bell,* 535 U.S. at 702, 122 S.Ct. at 1854. Powers has not established "that the state court's application of *Strickland's* attorney-performance standard was objectively unreasonable." *Id.* Therefore, there is no basis for habeas relief.

## IV. *CONCLUSION*

For all the reasons detailed herein, this court recommends to the District Judge to whom this case is assigned that the Petition for a Writ of Habeas Corpus be DENIED.[6]

**6.** The parties are hereby advised that under the provisions of Fed.R.Civ.P. 72 any party who objects to these proposed findings and recommendations must file a written objection thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with this Rule shall preclude further appellate review. *See*

*Keating v. Sec'y of Health & Human Servs.,* 848 F.2d 271, 275 (1st Cir.1988); *United States v. Valencia–Copete,* 792 F.2d 4, 6 (1st Cir.1986); *Park Motor Mart, Inc. v. Ford Motor Co.,* 616 F.2d 603, 604–605 (1st Cir.1980); *United States v. Vega,* 678 F.2d 376, 378–79 (1st Cir.1982); *Scott v. Schweiker,* 702 F.2d 13, 14 (1st Cir.1983); *see also Thomas v. Arn,* 474 U.S. 140, 153–54, 106 S.Ct. 466, 474, 88 L.Ed.2d 435 (1985). *Accord Phinney v. Wentworth Douglas Hosp.,* 199 F.3d 1, 3–4 (1st Cir.1999); *Henley Drilling Co. v. McGee,* 36 F.3d 143, 150–51 (1st Cir.1994); *Santiago v. Canon U.S.A., Inc.,* 138 F.3d 1, 4 (1st Cir. 1998).